*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RANDAL KRUEGER,

      Plaintiff-Appellant,

v

BRISTOL WEST PREFERRED INSURANCE
COMPANY, and BRISTOL WEST INSURANCE
COMPANY,

      Defendants,

and

SPECTRUM REHABILITATION,

      Appellee.

UNPUBLISHED
February 22, 2024

No. 363863
Wayne Circuit Court
LC No. 17-009744-NF

Before: PATEL, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Plaintiff appeals by leave granted[1] from the trial court's order granting appellee Spectrum Rehabilitation's ("Spectrum") motion for release of funds that was granted after plaintiff attempted to resolve Spectrum's claims against him through accord and satisfaction. Because the trial court erred when it granted Spectrum's motion, we vacate the trial court's order and remand for further proceedings.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In July 2016, plaintiff was involved in a motor vehicle accident and sustained injuries as a result. Plaintiff was insured by defendants, Bristol West Preferred Insurance Company and Bristol West Insurance Company (collectively, "Bristol West"). In June 2017, plaintiff filed suit against

---

[1] *Krueger v Bristol West Preferred Ins Co*, unpublished order of the Court of Appeals, entered April 25, 2023 (Docket No. 363863).

Bristol West claiming it breached its contractual and statutory duties under the no-fault act, MCL 500.3101 *et seq.*, to pay him personal injury protection ("PIP") benefits. In March 2018, the trial court entered a stipulated order directing the parties to arbitration. Although the order closed the case, the trial court retained jurisdiction to enforce the parties' arbitration agreement and to enter a judgment on any arbitration award.

In September 2021, plaintiff's attorney moved to reopen the case and withdraw representation of plaintiff under MCR 2.117(B)(3)(a) and (C)(2), claiming there was a breakdown in the attorney-client relationship after attempting to negotiate payment of plaintiff's outstanding medical bills. Plaintiff's attorney explained that plaintiff was awarded $235,000 in arbitration, leading the attorney to negotiate payment of the outstanding medical bills with plaintiff's medical providers. Because certain medical providers refused the offers from plaintiff's attorney, the funds were retained in an IOLTA account. Having exhausted all reasonable efforts to satisfy plaintiff but unable to finalize distribution of the remaining proceeds, plaintiff's attorney requested the trial court permit withdrawal and permit deposit of the remaining proceeds into an account with the trial court.

The trial court granted the motion to withdraw and directed counsel to "submit provider negotiated bills within 7 days and deposit funds for $41,005.54 with the court." In May 2022, the trial court entered a stipulated order removing plaintiff's case from case evaluation finding the "only remaining issue being Plaintiff resolving claims with his medical providers and to which settlement funds have already been placed with the Court[.]" In August 2022, plaintiff moved for summary disposition under MCR 2.116(C)(7) and (C)(10), and requested the trial court enter an order releasing all escrowed money. In the motion, plaintiff claimed he entered into an accord and satisfaction with each of his medical providers and sought the return of the balance of all monies on deposit with the Court.

In September 2022, Spectrum, a nonparty, moved for release of funds. According to Spectrum, it provided medical services to plaintiff totaling $19,934 under an agreement in which plaintiff agreed to provide Spectrum with a lien plaintiff's benefits. Plaintiff responded, claiming Spectrum did not have standing to assert its claims because it was not a party to the proceedings under MCR 2.201. Plaintiff also argued Spectrum was not entitled to payment because he entered into a valid accord and satisfaction with Spectrum. For its part, Spectrum admitted plaintiff mailed it a money order; however, because it never cashed the money order and because it rejected plaintiff's offer, Spectrum claimed there was no accord and satisfaction.

During the motion hearing, the trial court granted Spectrum's motion, concluding there was "no agreement that [Spectrum] would accept that amount of money for their bills." Plaintiff moved for reconsideration under MCR 2.119(F), which the trial court denied. This appeal followed.

## II. STANDING AND JURISDICTION

Plaintiff first argues the trial court erred by granting Spectrum's motion for release of funds because Spectrum was not a party and lacked standing to file its motion. We disagree.

## A. STANDARDS OF REVIEW

Whether a party has legal standing to assert a claim constitutes a question of law we review de novo. *Sterling Heights Pain Mgt, PLC v Farm Bureau Gen Ins Co of Mich*, 335 Mich App 245, 249 n 1; 966 NW2d 456 (2020). "[Q]uestions of statutory interpretation and the construction and application of court rules" is also reviewed de novo. *Dextrom v Wexford County*, 287 Mich App 406, 416; 789 NW2d 211 (2010).

B. ANALYSIS

In *Rottenberg v Lipsitz*, 300 Mich App 339, 355-356; 833 NW2d 384 (2013) (quotation marks and citations omitted), we explained:

> The principle of statutory standing is jurisdictional; if a party lacks statutory standing, then the court generally lacks jurisdiction to entertain the proceeding or reach the merits. In contrast, the real-party-in-interest rule is essentially a prudential limitation on a litigant's ability to raise the legal rights of another.

> A real party in interest is one who is vested with the right of action on a given claim, although the beneficial interest may be in another. The real-party-in-interest rule requir[es] that the claim be prosecuted by the party who by the substantive law in question owns the claim asserted[.]

When an assignment occurs, the "assignee of a cause of action becomes the real party in interest with respect to that cause of action, inasmuch as the assignment vests in the assignee all rights previously held by the assignor." *Cannon Twp v Rockford Pub Sch*, 311 Mich App 403, 412; 875 NW2d 242 (2015).

In this case, Spectrum had standing to assert its right to recover the funds as both the assignee of plaintiff through its own cause of action or through a motion to intervene, see MCR 2.101(B); MCR 2.209(A), and as an "interested person" under the no-fault act. See MCL 500.3112. There is no dispute that Spectrum did not file a separate claim or file a motion to intervene. Accordingly, Spectrum's participation in the lawsuit was as an "interested person."

Under MCL 500.3112, Spectrum was entitled to seek payment by filing a motion for release of funds, even though it was not a party to the lawsuit. That statute states, in relevant part: "If there is doubt about the proper person to receive the benefits or the proper apportionment among the persons entitled to the benefits, the insurer, the claimant, or *any other interested person* may apply to the circuit court for an appropriate order." MCL 500.3112 (emphasis added). Spectrum, as one of plaintiff's medical providers, is an "interested person" entitled to seek apportionment of plaintiff's arbitration award. See *Miller v Citizens Ins Co*, 288 Mich App 424, 443-444; 794 NW2d 622 (2010), aff'd in part, rev'd in part on other grounds 490 Mich 904 (2011) (concluding that a medical provider seeking payment for services rendered was an interested person under MCL 500.3112).

While it is true that Spectrum did not specifically cite MCL 500.3112 in its motion for release of funds, the motion did set forth, with factual support, its entitlement to the funds as a medical provider that provided plaintiff with treatment under an assignment of rights to plaintiff's no-fault benefits. Although Spectrum may have been missing the proper "label" on its motion, the substance was plainly for recovery of funds under MCL 500.3112. See *Jawad A Shah, MD v State*

*Farm Mut Auto Ins Co*, 324 Mich App 182, 204; 920 NW2d 148 (2018) (noting that this Court need not accept a party's choice of label for a motion because doing so would elevate form over substance). Accordingly, Spectrum had standing under MCL 500.3112 to file its motion for release of funds, and the trial court did not err by exercising its jurisdiction to enter the order granting Spectrum's motion.

## III. ACCORD AND SATISFACTION

Plaintiff also argues the trial court erred by granting Spectrum's motion for release of funds because plaintiff and Spectrum entered into an accord and satisfaction, barring Spectrum from seeking further payment. We agree with plaintiff that the trial court erred when it granted Spectrum's motion and therefore remand the case for reconsideration of the issue.

### A. STANDARDS OF REVIEW

"The existence of an accord and satisfaction may be decided as a question of law if the facts of the case are undisputed and not open to opposing inferences." *Hoerstman Gen Contr, Inc, v Hahn*, 474 Mich 66, 70; 711 NW2d 340 (2006). However, "if it is doubtful if an accord—an agreement—is established, the question is for the jury." *Fritz v Marantette*, 404 Mich 329, 333; 273 NW2d 425 (1978).

### B. ANALYSIS

"Accord and satisfaction is based on contract principles and is generally contractual in nature." *Nationwide Mut Ins Co v Quality Builders, Inc*, 192 Mich App 643, 646; 482 NW2d 474 (1992). When determining whether an accord and satisfaction has been established, MCL 440.3311, not the common law, applies to transactions involving a negotiable instrument, such as a money order. *Hoerstman*, 474 Mich at 75-76; see also MCL 440.3104.

MCL 440.3311 states:

> (1) If a person against whom a claim is asserted proves that (*i*) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (*ii*) the amount of the claim was unliquidated or subject to a bona fide dispute, and (*iii*) the claimant obtained payment of the instrument, the following subsections apply.

> (2) Unless subsection (3) applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

> (3) Subject to subsection (4), a claim is not discharged under subsection (2) if either of the following applies:

> (a) The claimant, if an organization, proves that (*i*) within a reasonable time before the tender, the claimant sent a conspicuous statement to the person against whom the claim is asserted that communications concerning disputed debts,

-4-

including an instrument tendered as full satisfaction of a debt, are to be sent to a designated person, office, or place, and (*ii*) the instrument or accompanying communication was not received by that designated person, office, or place.

      (b) The claimant, whether or not an organization, proves that within 90 days after payment of the instrument, the claimant tendered repayment of the amount of the instrument to the person against whom the claim is asserted. This subdivision does not apply if the claimant is an organization that sent a statement complying with subdivision (a)(*i*).

      (4) A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim. [MCL 440.3311 (emphasis added).]

Plaintiff disputed the amount he owed to his medical providers, including Spectrum. In the memo section of the money order plaintiff sent to Spectrum, plaintiff wrote: "Account 101627[,] payment as accord & satisfaction paid as agreed 3-31." Included with the money order was a letter from plaintiff stating: "Please except [sic] my payment as accord and satisfaction for account 101627 pays [sic] as agreed." Spectrum admitted it received plaintiff's money order, but it never informed plaintiff it rejected the offer or returned the money order.

In the trial court, plaintiff presented evidence that: (1) plaintiff tendered an instrument, i.e., the money order, to Spectrum as full satisfaction of the claims, MCL 440.3311(1)(*i*); (2) Spectrum's claim for payment was subject to a bona fide dispute, MCL 440.3311(1)(*ii*); (3) and Spectrum obtained the money order as payment, MCL 440.3311(1)(*iii*). The money order and the accompanying letter both contained a "conspicuous" statement indicating "the instrument was tendered as full satisfaction of the claim." See MCL 440.3311(2); *Nationwide Mut Ins Co*, 192 Mich App at 650.

Although Spectrum argued it did not cash plaintiff's money order, it offered no evidence to prove this assertion or determine what, exactly, happened to it. Similarly, Spectrum claims it rejected plaintiff's offer, but offered no evidence, such as a letter or other communication, to show how this rejection occurred. By contrast, plaintiff, in an affidavit, stated Spectrum never informed him it rejected his offer or returned the money order to him within 90 days. See MCL 440.3311(3)(b). The trial court, for its part, did not address Spectrum's disposition, if any, of the money order. Instead, the trial court concluded that plaintiff failed to show that there was an agreement—or accord—between the parties.

This conclusion by the trial court was error because the "agreement," for purposes of MCL 440.3311, was the receipt and purported retention of the negotiable instrument. Plaintiff presented evidence that he tendered the money order with a conspicuous statement indicating he was tendering it in full satisfaction of the debt. And although Spectrum claimed it rejected the offer, it presented no evidence supporting that assertion. Thus, on remand, the trial court shall address in the first instance the factual dispute between the parties regarding the disposition of plaintiff's money order and what effect that has on the resolution of the case.

In addition, there was no argument or evidence presented by either party showing plaintiff tendered the instrument in good faith. See MCL 440.3311(1). Good faith is defined as "honesty in fact and the observance of reasonable commercial standards of fair dealing." *Hoerstman*, 474 Mich at 76. Plaintiff tendered a money order to Spectrum for less than $300 for services Spectrum billed more than $19,000 for. The gross disparity between the amounts billed and tendered raises a genuine question whether plaintiff's tender was made in good faith. Accordingly, on remand, the parties and the trial court shall address this issue as well.

In sum, because pertinent facts underlying the case are disputed and open to opposing inferences, and because the trial court's cursory treatment of plaintiff's argument render it impossible for this Court to engage in any meaningful analysis of the trial court's decision, we must vacate the trial court's order. Therefore, the trial court's order granting Spectrum's motion for release of funds is vacated, and the case is remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction. Neither party having prevailed in full, no costs are awarded. See MCR 7.219(A).

/s/ Sima G. Patel
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan